AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

**FILED**
**UNITED STATES DISTRICT COURT**
**LAS CRUCES, NEW MEXICO**

# UNITED STATES DISTRICT COURT

for the

District of New Mexico

MAR – 6 2026

**MITCHELL R. ELFERS**
**CLERK OF COURT**

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Blue Motorolla (Moto g play version 14)<br>Cellular Smart Phone<br>575-805-0625 (pin 1967) | )<br>)<br>)<br>)<br>)<br>)<br>) |

Case No. 26MR479

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

Residential structure more fully described in Attachment A, which is attached and incorporated herein.

located in the _____ District of _____ New Mexico _____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, attached and incorporated herein.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☑ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 18 U.S.C. § 2251(a) | Production of Child pornography |
| Title 18 U.S.C. § 2422(b) | Enticement of a Minor |

The application is based on these facts:

See Affidavit in Attachment C, attached and incorporated herein.

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Cynthia L. Macias*
*Applicant's signature*

HSI Special Agent Cynthia Macias
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_electronic submission and telephonic swearing_ *(specify reliable electronic means)*.

Date: 3/6/2026

*Judge's signature*

City and state: Las Cruces, New Mexico

**BARBARA S. EVANS**
**U.S. MAGISTRATE JUDGE**
*Printed name and title*

## ATTACHMENT A

## PROPERTY TO BE SEARCHED

The **affidavit** is submitted in support of the warrant to search and seize information, more fully described in **Attachment B**, contained in the following electronic device (referred to in **affidavit** and **Attachment B** as Subject Telephone):

## Subject Telephone

Subject Telephone is described as a blue Moto G play, Android Version 14 cellular smart phone. It was seized by HSI agents from Luis Fernando VALENCIA-Hicks at the time of his arrest on February 27, 2026.  Subject Telephone is currently located at the HSI office and is depicted below:

 

**ATTACHMENT B**

**PARTICULAR THINGS TO BE SEIZED/INFORMATION TO BE RETRIEVED**

The particular things to be seized include all records, in whatever format, stored on Subject's Telephone as described in **Attachment A** that are related to violations of 18 U.S.C. § 2251(a) and 18 U.S.C. § 2422(b) including, but not limited to the following:

1.     Digital, cellular, direct connect, and/or other phone numbers, names, addresses, and other identifying information of possible victims;

2.     Digital, cellular, direct connect, and/or other phone numbers dialed from, which contacted, or which are otherwise stored on Subject Telephone, along with the date and time each such communication occurred;

3.     Text message logs and text messages whether sent from, to, or drafted on Subject Telephone, along with the date and time each such communication occurred;

4.     Message logs and messages sent from, to, or drafted on, Subject Telephone, through applications such as Facebook, WhatsApp, Snapchat, etc., along with the date and time each communication occurred;

5.     The content of voice mail messages stored on Subject Telephone, along with the date and time each such communication occurred;

6.     Photographs or video recordings stored on Subject Telephone;

7.     Information relating to the schedule, whereabouts, of the user of Subject Telephone;

8.     Information relating to other methods of communications utilized by the user of Subject Telephone, as well as stored on Subject Telephone;

9.     Evidence of user attribution showing who used or owned Subject Telephone, such as logs, phonebooks, saved usernames and passwords, documents, and internet browsing history.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

## AFFIDAVIT IN SUPPORT OF ORDER AUTHORIZING SEARCH WARRANT FOR SUBJECT TELEPHONE.

I, Cynthia Macias, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.      I am a Special Agent (SA) with the Department of Homeland Security, Homeland Security Investigations (HSI), and have been employed by HSI since April 2010.  During my tenure with HSI (formerly Immigration and Customs Enforcement), I have been classified, trained, and employed as a federal law enforcement officer with statutory arrest authority charged with conducting criminal investigations of alleged violations of federal criminal statutes, including Title 18 of the United States Code.  I am currently assigned as a criminal investigator for the Assistant Special Agent in Charge, Las Cruces, New Mexico.  Prior to my current position, I was a Customs and Border Protection Officer.  During the course of this investigation, I have consulted with other HSI SAs and other law enforcement detectives and officers who have extensive experience investigating crimes against children including: child trafficking, abusive images of children (child pornography, child exploitation); and enticing children to engage in illegal sexual acts.  I have conducted numerous state and federal investigations and received training, education, and have experience with the identification and investigation of child exploitation crimes.  I have been personally involved with the execution of search warrants to search electronic devices and seize materials relating to the exploitation of children and have obtained arrest warrants in child exploitation investigations.

2.      The following information contained in this affidavit is based on my training and experience, my personal participation in this investigation, and information provided to me by other law enforcement officials. Unless otherwise indicated, where I have referred to written or oral statements, I have summarized them in substance and in part, rather than verbatim. Not all of the facts of the investigation known to me are contained herein, only those necessary to establish probable cause to search the below-listed items pertaining to the captioned investigation.  As will be shown below, there is probable cause to believe that evidence of violation of 18 U.S.C. § 2251(a) production of child pornography and 18 U.S.C. § 2422(b), enticement of a minor will be found in the cellular smart phone listed and described in Attachment A.

### IDENTIFICATION OF THE CELLULAR PHONE TO BE SEARCHED

3.      The property to be searched is a cellular smart phone belonging to Luis VALENCIA-Hicks.

4.      The applied-for warrant would authorize the forensic examination of the cellular smart phone for the purpose of identifying electronically stored data particularly described in Attachment B.

### LEGAL DEFINITIONS

5.      The following terms are relevant to this affidavit in support of this application for a search warrant:

a.      *Child Pornography*: The term "child pornography" is defined at 18 U.S.C. § 2256(8). It consists of visual depiction of sexually explicit conduct where (a) the production of the visual depiction involved the use of a minor engaged in sexually

explicit conduct, (b) the visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaged in sexually explicit conduct, or (c) the visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaged in sexually explicit conduct), as well as any visual depiction, the production of which involves the use of a minor engaged in sexually explicit conduct. *See* 18 U.S.C. §§ 2252 and 2256(2), (8).

b.      *Computer*: The term "computer" refers to "an electronic, magnetic, optical, electrochemical, or other high-speed data processing device performing logical or storage functions and includes any data storage facility or communications facility directly related to or operating in conjunction with such device" and includes smartphones, mobile phones and devices, and tablets. *See* 18 U.S.C. § 1030(e)(1).

c.      *Electronic mail* ("e-mail" or "email"): "E-mail" refers to a method of exchanging digital messages from an author to one or more recipients. Users may attach digital media to their e-mails. Modern e-mail operates across the Internet or other computer networks. E-mail systems are based on a store-and-forward model. Email servers accept, forward, deliver and store messages. E-mail accounts may be accessed by computers, including smartphones and tablets.

d.      *Minor*: The term "minor" means any person under the age of eighteen years. See 18 U.S.C. § 2256(1).

e.      *Sexual Activity*: The phrase "sexual activity for which any person can be charged with a criminal offense" includes production of child pornography. *See* 18 U.S.C. § 2427. There is no federal statutory definition of "sexual activity," the term is given its natural meaning.

2

f.     *Sexually Explicit Conduct*: The term "sexually explicit conduct" means actual or simulated (a) sexual intercourse, including genital-genital, oral-genital, or oral-anal, whether between persons of the same or opposite sex; (b) bestiality; (c) masturbation; (d) sadistic or masochistic abuse; or (e) lascivious exhibition of the genitals or pubic area of any persons. *See* 18 U.S.C. § 2256(2).

g.     *Visual Depictions*: "Visual depictions" include undeveloped film and videotape, and data stored on computer disk or by electronic means, which is capable of conversion into a visual image. *See* 18 U.S.C. § 2256(5).

## **RELEVANT STATUTES**

6. Title 18 U.S.C. § 2251(a) states Any person who employs, uses, persuades, induces, entices, or coerces any minor to engage in, or who has a minor assist any other person to engage in, or who transports any minor in or affecting interstate or foreign commerce, or in any Territory or Possession of the United States with the intent that such minor engage in, any sexually explicit conduct for the purpose of producing any visual depiction of such conduct or for the purpose of transmitting a live visual depiction of such conduct, shall be punished as provided under subsection (e), if such person knows or has reason to know that such visual depiction will be transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed, if that visual depiction was produced or transmitted using materials that have been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means, including by computer or if such visual depiction has actually been transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed.

3

7. Title 18 U.S.C. § 2422(b) states, "[w]hoever, using the mail or any facility or means of interstate or foreign commerce…knowingly persuades, induces, entices, or coerces any individual who has not attained the age of 18 years, to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense, or attempts to do so, shall be" guilty of a federal crime.

   a. New Mexico State Code Section 30-9-13(B)(2)(a) makes it a State of New Mexico crime for Criminal sexual contact of a minor in the second degree consists of all criminal sexual contact of the unclothed intimate parts of a minor perpetrated on a child thirteen to eighteen years of age when the perpetrator is in a position of authority over the child and uses that authority to coerce the child to submit.

   b. New Mexico State Code Section 30-9-10(E) makes it a State of New Mexico crime when a person in a "position of authority" means that position occupied by a parent, relative, household member, teacher, employer or other person who, by reason of that position, is able to exercise undue influence over a child.

   c. New Mexico State Code Section 30-9-13(D)(2) makes it a State of New Mexico crime for Criminal sexual contact of a minor in the fourth degree consists of all criminal sexual contact of a minor perpetrated on a child thirteen to eighteen years of age when the perpetrator, who is a licensed school employee, an unlicensed school employee, a school contract employee, a school health service provider or a school volunteer, and who is at least eighteen years of age and is at least four years older than the child and not the spouse of that child, learns while performing services in or for a school that the child is a student in a school.

4

    d. New Mexico State Code Section 30-9-11(G) makes it a State of New Mexico crime Criminal sexual penetration in the fourth degree consists of all criminal sexual penetration:

(1) not defined in Subsections D through F of this section perpetrated on a child thirteen to sixteen years of age when the perpetrator is at least eighteen years of age and is at least four years older than the child and not the spouse of that child; or

(2) perpetrated on a child thirteen to eighteen years of age when the perpetrator, who is a licensed school employee, an unlicensed school employee, a school contract employee, a school health service provider or a school volunteer, and who is at least eighteen years of age and is at least four years older than the child and not the spouse of that child, learns while performing services in or for a school that the child is a student in a school.

## **DETAILS OF THE INVESTIGATION**

8.  On September 24, 2025, Las Cruces Police Department (LCPD) responded to a call at Lynn Middle School for a sex offence.

9.  On September 24, 2025, HSI was informed by Las Cruces Police Department that an individual identified as Luis VALENCIA-Hicks, a teacher's aide, employed with the Las Cruces Public School District and assigned to Lynn Middle School, was sexually abusing his fourteen-year-old student (hereinafter "DOE").

10. VALENCIA-Hicks was born in 1967, which makes him 59 years old.  He has been employed as an Educational Assistant at Lynn Middle School working with Special Education

5

students since September 1, 2021.

11. DOEs mother stated she became aware of ongoing communication between DOE and VALENCIA-Hicks over the past year. The communication included video calls via Google Meet. The communication began as academic tutoring sessions but later escalated to discussions sexual in nature. DOEs mother provided screenshots of call logs and identified the phone number associated to VALENCIA-Hicks. DOE stated that VALENCIA-Hicks touched him inappropriately during the previous school year (2024-2025) and was told not to tell his mother. DOEs mother became suspicious when DOE came home with a birthday card and gifts from VALENCIA-Hicks.

12. On October 6, 2025, LCPD scheduled a forensic interview at La Pinon located in Las Cruces, New Mexico. At the time of the interview, DOE was 14 years old. DOE stated the communication between VALENCIA-Hicks and DOE started when DOE was 12 years of age. DOE stated that the calls were about school then progressed into conversations about sex. DOE stated that VALENCIA-Hicks touched his private parts many times which he clarified was his penis. DOE stated that VALENCIA-Hicks at first touched his penis then it progressed to VALENCIA-Hicks masturbating DOE. DOE stated that VALENCIA-Hicks pulled down his pants and told DOE to penetrate his anus, which he stated he did. DOE stated that VALENCIA-Hicks would have DOE masturbate and ejaculate into toilet and/or tissue so that DOE could give it to VALENCIA-Hicks. DOE stated VALENCIA-Hicks stated he liked the smell of the toilet and/or tissue. DOE stated that when they would video call, VALENCIA-Hicks would show DOE his penis and both would masturbate. DOE stated that the touching would occur in the bathroom at Lynn Middle School. DOE stated that VALENCIA-Hicks texted him that he missed him and that he cared for him. DOE stated that this was a secret and that he was advised by VALENCIA-Hicks not to tell anyone about what they were doing. DOE stated the behavior started when he was 12 years of age in grade 7 and continued until recently.

6

13. On October 20, 2025, LCPD obtained a search warrant for VALENCIA-Hicks for Google and ATT Mobility email address and phone number.

14. On October 24, 2025, information from Google search warrant was received. The information confirmed the email address of luisvalenciahicks@gmail.com is associated to VALENCIA-Hicks, which gave his name and telephone number. A video labeled VID_20250905_094455444-11c37t2z7ef02 in the folder labeled luisvalenciahicks@gmail.com.178598657629.GooglePhotos.PhotoResourceLegal_002 shows a person recording themselves masturbating. The tile floor has small white squares with a blue bathroom stall. The audio is a male's voice saying, "Take your time," and whispers in the Spanish language: "paralo" and "appagalo" which in English means to stop, then the video ends. The voice is not close to the video, so it seems the males voice is outside the stall as there is a voice heard making a sound that is closer to the device used to record the act. The video is 44 seconds long and the subject recording himself is wearing white sneakers with black trim, and a white t-shirt. The video was created on September 5, 2025, at 9:45 AM. There was a photograph of VALENCIA-Hicks and DOE labeled "IMG_20250905_140309938-11c3t9lxaqqf6" which shows DOE wearing a white shirt with a red design on the left breast area of the shirt. The photograph details show that the photograph was taken on September 5, 2025, at 2:03 PM with a Motorola cellular phone. There are other videos that show a male showing his penis in a bathroom stall. The shoes that are seen in the video are like the shoes that DOE is seen wearing in the Forensic Interview on October 6.

15. On October 30, 2025, LCPD Crime Scene Technician took photographs of the boys' bathrooms, which show white colored tiles and blue stalls. The bathroom in the previously described video appear to be a bathroom at Lynn Middle School.

16. On November 4, 2025, a follow-up interview with DOE regarding the video on VALENCIA-Hick's Google account. DOE stated he sent videos to VALENCIA-Hicks of himself

7

masturbating. DOE stated he would use his black cellular phone with the damaged port and had also used VALENCIA-Hick's cellular phone to record himself masturbating. DOE stated he would use his cellular phone with the red case for facetime calls with VALENCIA-Hicks. DOE stated that during the facetime calls he would masturbate and watch pornography while VALENCIA-Hicks would watch DOE. DOE stated that each encounter with VALENCIA-Hicks occurred in the same bathroom at Lynn Middle School.

17. Based on my training and experience and the information provided by DOE, I believe VALENCIA-Hicks used his cellphone, which is a means and facility of interstate commerce, to show DOE pornography to persuade, induce, entice, or coerce DOE, who had not attained the age of 18 years, to engage in any sexual activity for which any person can be charged with a criminal offense, specifically, New Mexico State Code Section 30-9-13(C)(1) and New Mexico State Code Section 30-37-2.

## BACKGROUND ON CHILD PORNOGRAPHY, COMPUTERS, AND THE INTERNET

18. I have both training and experience in the investigation of computer-related crimes. Based on my training and knowledge, I know the following:

a. Digital technology is the primary way in which individuals interested in child pornography interact with each other.

b. Smartphones with cameras save photographs or videos as a digital file. Photos and videos taken on a smartphone may be stored on a smartphone. These memory cards are often large enough to store thousands of high-resolution photographs and/or videos.

c. Mobile devices such as smartphones may also connect to other computers via wireless connections. Electronic contact can be made to literally millions of computers around the world. Child pornography can therefore be easily, inexpensively and

8

anonymously (through electronic communications) produced, distributed, and received by anyone with access to a computer or smartphone.

d.    The cellular smart phone's ability to store images in digital form makes the computer itself an ideal repository for child pornography.  It is extremely easy for an individual to take a photo or a video with a camera-bearing smartphone and upload that photo.

e.    The Internet affords individuals several different venues for obtaining, viewing, and trading child pornography in a relatively secure and anonymous fashion.

f.    Individuals also use online resources to retrieve and store child pornography.  Some online services allow a user to set up an account with a remote computing service that may provide e-mail services and/or electronic storage of computer files in any variety of formats.  A user can set up an online storage account (sometimes referred to as "cloud" storage) from any computer or smartphone with access to the Internet.  Even in cases where an individual uses online storage, however, law enforcement can find evidence of child pornography on the user's smartphone in most cases.

19. As is the case with most digital technology, communications by way of computer can be saved or stored on the computer used for these purposes.  Storing this information can be intentional (*i.e.*, by saving an e-mail as a file on the computer or saving the location of one's favorite websites in, for example, "bookmarked" files) or unintentional.  Digital information, such as the traces of the path of an electronic communication, may also be automatically stored in many places (*e.g.*, temporary files or ISP client software, among others).  In addition to electronic communications, a computer user's Internet activities generally leave traces or

"footprints" in the web cache and history files of the browser used. Such information exists indefinitely until it is overwritten by other data.

## SPECIFICS OF SEARCH

20.    As described above and in Attachment B, this application seeks permission to search for records that might be found on the VALENCIA-Hicks cellular smart PHONE in whatever form they are found.

21.    I submit that there is probable cause to believe the records referenced above will be stored on VALENCIA-Hicks cellular phone for at least the following reasons:

a.    Based on my knowledge and training, I know that forensic examiners can recover computer files or remnants of such file's months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

b.    Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

c.      Similarly, files that an individual viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

22.     As further described in Attachment B, this application seeks permission to locate not only files that might serve as direct evidence of the crimes described in the warrant, but also for forensic electronic evidence that establishes how the cellular phone was used and to believe that this forensic electronic evidence will be on the cellular because:

a.      Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active.  Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords.

b.      As explained herein, information stored within a computer and other electronic storage media may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion.

c.      Additionally, some information stored within a computer or electronic storage media may provide crucial evidence relating to the physical location of other evidence and the suspect.  For example, images stored on a computer may both show a particular location and have geolocation information incorporated into its file data.  Such file data typically also contains information indicating when the file or image was created.

The existence of such image files, along with external device connection logs, may also indicate the presence of additional electronic storage media (e.g., a digital camera or cellular phone with an incorporated camera). The geographic and timeline information described herein may either inculpate or exculpate the computer user. Last, information stored within a computer may provide relevant insight into the computer user's state of mind as it relates to the offense under investigation. For example, information within the computer may indicate the owner's motive and intent to commit a crime (e.g., internet searches indicating criminal planning), or consciousness of guilt (e.g., running a "wiping" program to destroy evidence on the computer or password protecting/encrypting such evidence in an effort to conceal it from law enforcement).

d.      A person with appropriate familiarity with how a computer works can, after examining this forensic evidence in its proper context, draw conclusions about how computers were used, the purpose of their use, who used them, and when.

e.      The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. While it is possible to specify in advance the records sought, a review team cannot always readily review computer evidence or data in order to pass it along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

f.      Further, in finding evidence of how a person used a cellular phone/computer, the purpose of its use, who used it, and when, sometimes it is necessary

12

to establish that a particular thing is not present on a storage medium. For example, the presence or absence of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent.

g.    I know that when an individual uses a computer to obtain or access child pornography, the individual's computer will generally serve both as an instrumentality for committing the crime, and also as a storage medium for evidence of the crime. The computer is an instrumentality of the crime because someone used it as a means of committing the criminal offense. The computer is also likely to be a storage medium for evidence of crime. From my training, I believe that a computer used to commit a crime of this type may contain evidence of how VALENCIA-Hicks used the cellular phone (computer); sent or received data; notes as to how the criminal conduct was achieved; records of Internet discussions about the crime; and other records that indicate the nature of the offense.

23.    Based upon my training and information relayed to me by agents and others involved in the forensic examination of computers, I know that data can be stored on cellular phones capable of storage or offsite storage servers maintained by corporations, including but not limited to "cloud" storage.

a.    Searching cellular phones requires the use of precise, scientific procedures, which are designed to maintain the integrity of the evidence and to recover "hidden," erased, compressed, encrypted, or password-protected data. Computer hardware and storage devices may contain "booby traps" that destroy or alter data if certain procedures are not scrupulously followed. Since computer data is particularly vulnerable to inadvertent or intentional modification or destruction,

13

a controlled environment, such as a law enforcement laboratory, is essential to conducting a complete and accurate analysis of the equipment and storage devices from which the data will be extracted. Further, the examination may employ techniques that would damage or destroy the device but result in a forensically sound copy of data stored on the device.

24. Additionally, based upon my training and information related to me by agents and others involved in the forensic examination of computers, I know that routers, modems, and network equipment used to connect computers to the Internet often provide valuable evidence of, and are instrumentalities of, a crime.

25. The passcode that unlocks the subject's device was given to law enforcement.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

25. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

26. *Forensic evidence*. As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Devices were used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Devices because:

a.  Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b.  Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c.  A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d.  The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e.  Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

f.  I know that when an individual uses an electronic device to produce child pornography, the individual's electronic device will generally serve both as an

15

instrumentality for committing the crime, and also as a storage medium for evidence of the crime. The electronic device is an instrumentality of the crime because it is used as a means of committing the criminal offense. The electronic device is also likely to be a storage medium for evidence of crime. From my training and experience, I believe that an electronic device used to commit a crime of this type may contain data that is evidence of how the electronic device was used; data that was sent or received; and other records that indicate the nature of the offense.

27. *Nature of examination*. Based on the foregoing, the warrant I am applying for would permit the examination of the devices consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

28. Based on the foregoing information, I have probable cause to believe that evidence of crime, contraband, fruits of a crime, other items illegally possessed, and property designed for use, intended for use or used in committing a crime, that is, violations of 18 U.S.C. §§ 2422(b), 18 U.S.C. § 2251(a), and 18 U.S.C. §2252A(a)(5)(B) relating to material involving the sexual exploitation of minors, as set forth herein and in Attachment B. I, therefore, respectfully request that a search warrant be issued authorizing the search of the cellular smart phone in Attachment B.

## **RETENTION OF IMAGE**

29. The government will retain a forensic image of the electronic storage device subjected to *analysis* for a number of reasons, including proving the authenticity of evidence to

be used at trial; responding to questions regarding the corruption of data; establishing the chain of custody of data; refuting claims of fabricating, tampering, or destroying data; and addressing potential exculpatory evidence claims where, for example, a defendant claims that the government avoided its obligations by destroying data or returning it to a third party.

## CONCLUSION

31.    I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Device described in Attachment A.

32.    Assistant United States Attorney James Dickens reviewed and approved this search warrant application.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Respectfully submitted,

*Cynthia L. Macias*

Cynthia Macias
Special Agent
Homeland Security Investigations (HSI)

Subscribed electronically and sworn telephonically

to me on this 6th day of March 2026:

UNITED STATES MAGISTRATE JUDGE

17